UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

WOODFOREST NATIONAL BANK,

    Plaintiff,

vs.

FREEMAN ORTHODONTICS, P.A. a Florida Corporation, FREEMAN MOBILE ORTHODONTICS, PLLC, a Florida professional limited liability company, INTERSTELLAR DISRUPTION LLC, a New Mexico Limited Liability Company, GOBIG.LY LLC, a Delaware limited liability company, CHRISTOPHER FREEMAN, individually, WAYNE PEARSON, individually, and JEFFREY WILSON, individually,

    Defendants.
_____/

Case No. 1:19-cv-25168

**PLAINTIFF WOODFOREST NATIONAL BANK'S COMPLAINT
TO COLLECT AMOUNTS DUE AND TO FORECLOSE ON COLLATERAL**

Plaintiff Woodforest National Bank ("Lender"), by and through undersigned counsel and pursuant to Fed. R. Civ. P. 3, sues Freeman Orthodontics, P.A., Interstellar Disruption, LLC, Gobig.ly LLC, Freeman Mobile Orthodontics, PLLC, Christopher Freeman, Wayne Pearson, and Jeffrey Wilson (collectively as "Defendants") to collect amounts due and owing under a commercial loan agreement, promissory note, and guaranties, and to foreclose on security interests in collateral (the "Complaint"). In support thereof, Lender respectfully represents as follows:

**I.    PARTIES**

1.    Lender is a national banking association with its main office and principal place of business located at 1330 Lake Robbins, Suite 100, The Woodlands, Texas 77380.

1290133.2

2. Christopher Freeman ("Freeman") is an individual of full age of majority, a citizen of Florida, and resides in Fort Lauderdale, Florida with a principal residence located at 5201 North East 31st Avenue, Fort Lauderdale, Florida.

3. Wayne Pearson ("Pearson"), is an individual of full age of majority, a citizen of Arkansas, and resides in Springdale, Arkansas with a principal residence located at 19586 David Ford Road, Springdale, Arkansas 72764.

4. Jeffrey Wilson ("Wilson") is an individual of full age of majority, a citizen of Colorado, and resides in Denver, Colorado with a principal residence located at 3318 North Clay Street Denver, Colorado 80211.

5. Freeman Orthodontics, P.A. ("Freeman, P.A.") is a Florida corporation with its principal place of business located at 1825 NE 45th Street, Suite B, Fort Lauderdale, Florida 33308.

6. Gobig.ly LLC ("Gobig.ly") is a Delaware limited liability company in which Pearson and Wilson are the sole members located at 2304 Turner Street, Suite 5, Springdale, Arkansas 72764.

7. Freeman Mobile Orthodontics PLLC ("Freeman Mobile") is a Florida professional limited liability company in which Freeman is the sole member with its principal place of business located at 5201 North East 31st Avenue, Fort Lauderdale, Florida 33308.

8. Interstellar Disruption LLC ("Interstellar") is a New Mexico limited liability company in which Pearson, Wilson, and iScan Ortho, LLC ("iScan") are the sole members with its principal place of business located at 2308 Turner Street, Suite 5, Springdale Arkansas 72764.

9. Freeman Mobile, Freeman, P.A. , Interstellar, and Gobig.ly are collectively referred to as "Borrowers."

10. Freeman, Pearson, and Wilson are collectively referred to as "Guarantors."

## II.     JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

12.     The matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, because the balance due under the Loan Documents includes no less than $6,496,000.00 in principal as of December 16, 2019.

13.     Complete diversity in the present dispute exists because Lender is a citizen of Texas, and Defendants are citizens of the Florida, Colorado, or Arkansas.

14.     Lender's main office and principal places of business is located at 1330 Lake Robbins, Suite 100, The Woodlands, Texas 77380 pursuant to its articles of association. Lender is therefore a citizen of the State of Texas.

15.     Freeman is a natural person domiciled in Florida, and is therefore a citizen of Florida.

16.     Pearson is a natural person domiciled in Arkansas, and is therefore a citizen of Arkansas.

17.     Wilson is a natural person domiciled in Colorado, and is therefore a citizen of Colorado.

18.     Gobig.ly is a limited liability company in which Pearson and Wilson are the sole members as citizens of Arkansas and Colorado. Gobig.ly is therefore a citizen of Arkansas and Colorado.

19.     Freeman Mobile is a Florida professional limited liability company in which Freeman is the sole member as a citizen of Florida. Freeman Mobile is therefore a citizen of Florida.

1290133.2

20. Freeman, P.A. is a corporation incorporated under Florida law with its principal place of business located at 1825 NE 45th Street, Suite B, Fort Lauderdale, Florida 33308. Freeman, P.A. is therefore a citizen of Florida.

21. Interstellar is a New Mexico limited liability company in which Pearson, Wilson, and iScan are its sole members. iScan is a Florida limited liability company in which Freeman is the sole member as a citizen of Florida, and, therefore, iScan is a citizen of Florida. Interstellar's members are citizens of Arkansas, Colorado, or Florida. Interstellar is therefore a citizen of Arkansas, Colorado, and Florida.

22. iScan is a Florida limited liability company in which Freeman is the sole member with its principal place of business located at 5201 North East 31st Avenue, Fort Lauderdale, Florida 33308.

23. Jurisdiction and venue are proper in this Court pursuant to Section 23 of the Guaranties (as defined below) and Section K of the Note (as defined below) pursuant to which Borrowers and Guarantors consented to the jurisdiction and venue of any state or federal court in Miami-Dade County in the event Lender initiated a legal proceeding to collect amounts due and owing under the Loan Document (as defined below).

## III. GENERAL ALLEGATIONS

24. Lender seeks to recover judgment for the current amounts due and to become due on the indebtedness under a credit facility hereinafter described.

25. Borrowers used the proceeds under the credit facility to support the operations of a mobile orthodontic business.

26. All conditions precedent to the maintenance of the causes of action alleged herein have been complied with, have occurred either in fact or by operation of law, and/or have been waived.

1290133.2

- 4 -

### A.   The Loan and the Loan Documents

27.   Lender is the original obligee as well as the current owner and holder of a revolving credit facility extended to Borrowers in the principal amount of six-million five-hundred thousand dollars ($6,500,000.00) (the "Loan").

28.   The documents evidencing the Loan were executed for value received.

29.   Borrowers, Guarantors, and Lender entered into several binding agreements effective May 2, 2018 evidencing the Loan, (collectively referred to as the "Loan Documents"), including the following:

a)   The Loan Agreement (the "Loan Agreement") dated May 2, 2018, executed by Lender and Borrowers pursuant to which Lender extended the Loan to Borrowers under the terms and conditions set forth therein, and a true and correct copy of which is attached hereto as "Exhibit A";

b)   Revolving Line of Credit Promissory Note (the "Note"), dated May 2, 2018, executed by the Borrowers in favor of Lender, in the amount of six-million five hundred thousand dollars ($6,500,00.00), bearing interest at Wall Street Journal Prime Rate plus one and three-fourths percent (1.75%), commencing on June 10, 2018 with payments of accrued interest due and payable on the tenth of each month thereafter, with a maturity date of May 2, 2019, and a true and correct copy of which is attached hereto as "Exhibit B";

c)   Certificate of Company Resolutions, Statuses and Incumbencies (the "Certificates of Resolutions") pursuant to which all corporate resolutions on April 27, 28, and May 1, 2018, adopted by Borrowers respectively were memorialized in writing, including, without limitation, the authority to borrow money, to grant security interests, to execute the Loan Documents, and true and correct copies of which are attached hereto as "Exhibits C" – "F";

  d) Security Agreement, dated May 2, 2018, granting a first priority security interest in all assets of Borrowers (the "Collateral") as more fully set forth therein (the "Security Agreement"), and a true and correct copy of which is attached hereto as "Exhibit G";

  e) UCC-1 Financing Statement filed against Gobig.ly, File No. 20183012511 ("Gobig.ly UCC-1"), filed on May 3, 2018 with the Delaware Department of State, perfecting the security interest in certain Collateral as described in the Security Agreement, and a true and correct copy of which is attached hereto as "Exhibit H";

  f) UCC-1 Financing Statement filed against Freeman, P.A. and Freeman Mobile, File No. 201805086195 ("Freeman UCC-1"), filed on May 3, 2018 with the Florida Secured Transactions Registry, perfecting the security interest in certain Collateral as described in the Security Agreement, and a true and correct copy of which is attached hereto as "Exhibit I";

  g) UCC-1 Financing Statement filed against Interstellar, File No. 20180053986J ("Interstellar UCC-1"), filed on May 4, 2018 with the New Mexico Secretary of State, perfecting the security interest in certain Collateral as described in the Security Agreement, and a true and correct copy of which is attached hereto as "Exhibit J";

  h) Guaranties of Payment and Performance (collectively as the "Guaranties") effective May 2, 2018, executed by the Guarantors respectively in favor of Lender, unconditionally and irrevocably guaranteeing payment and performance under the Loan Documents, and true and correct copies of which are attached hereto as "Exhibits K" – "M."

30. Under the terms of the Guaranties, Guarantors unconditionally and irrevocably guaranteed punctual payment when due, whether by lapse of time, acceleration or maturity, of all principal, interest, fees, late charges, costs and expenses, and any other sums Borrowers owe under the Loan Documents. Ex. K – L at § 1.

31. Guarantors guaranteed performance of all obligations of Borrowers under the Loan Documents, including and without limitation, all obligations of Borrowers to perform duly and punctually and to observe all other terms, covenants and conditions of the Loan Documents. Ex. K – L at § 1.

32. The Guaranties are absolute, irrevocable, and unconditional guaranties of payment and performance, and Guarantors are liable for the payment and performance of the guaranteed obligations as a primary obligor. Ex. K – L at § 3(a).

33. The Guaranties provide that suit may be brought without notice against Borrowers or against any or all of Guarantors separately or together without impairing the rights of the Lender against any other Borrower or Guarantor. Ex. K – L at §§ 3(b), 4.

**B.    Events of Default under the Loan Documents**

34. Section 7 of the Loan Agreement provides, among other things, that the following constitute an "Event of Default":

a) Borrowers' failure to perform any obligation under the Note to pay principal or interest within five (5) days following the date when due [Ex. A at § 7(a)];

b) Borrowers' failure to perform any obligation, liability, or indebtedness under the Note, the Loan Agreement, or the other Loan Documents to pay money within five (5) days following the date when due [Ex. A at § 7(b)];

c) Borrowers' failure to perform any other obligation under the Note, Loan Agreement, or the Loan Documents [Ex. A at § 7(c)];

d) A "Default" or "Event of Default" under any of the Loan Document [Ex. A at § 7(e)];

e) A warranty or representation made by Borrowers in the Loan Agreement that is false and misleading in any material respect, or Borrowers' failure to keep, observe, or

1290133.2

- 7 -

perform any of the terms, covenants, representations or warranties contained in Loan Documents [Ex. A at § 7(f)];

      f)      Lender's determination that it is insecure for any reason [Ex. A at § 7(n)];

      g)      A material change in the kind or type of Borrowers' prospects or business, financial or otherwise, or in the financial condition of any Guarantor, without the prior written consent of Lender [Ex. A at § 7(o)];

      h)      Lender's good faith determination that the prospects for payment or performance of Borrowers' obligations under the Loan Documents are impaired or there has been a material adverse change in the business prospects of Borrowers, financial or otherwise [Ex. A at § 7(p)]; or

      i)      Borrowers' or Guarantors' default under any loan, contract or agreement extended by Lender or any of its affiliates, as the same may be amended, restate, modified or replaced from time to time [Ex. A at § 7(q)].

35. Section H of the Note provides, among other things, that the following constitutes an "Event of Default":

      a)      Borrowers' failure to perform any obligation under the Note to pay principal or interest within five (5) days following the date when due [Ex. B at § H(a)];

      b)      Borrowers' failure to perform any other obligation, liability, or indebtedness under the Loan Documents within five (5) days following the date when due [Ex. B at § H(b)]; or

      c)      A "Default" or "Event of Default," as defined in each respective document occurs under any of the Loan Documents [Ex. B at § H(c)].

36. Section 1 of the Security Agreement provides, among other things, that the term "Event of Default" shall have the same meaning given in the Loan Agreement. Ex. G. at pg. 2.

37. Upon a Default or an Event of Default (as defined in the Loan Documents), all obligations of Lender under the Loan Documents immediately terminate and, at Lender's option, all indebtedness – which includes all indebtedness evidenced by the Loan Documents, including principal and interest together with all costs and expenses for which Borrowers are responsible under the Loan Documents – immediately become due and payable, all without notice of any kind to Borrowers or Guarantors, and Lender shall have all the rights and remedies provided in the Loan Documents or available at law, in equity or otherwise. Ex. A at §§ 7, 8; Ex. B. at § H; Ex. G at § 5.

38. Upon default, the interest rate under the Note shall be increased to the maximum interest rate which may be collected from Borrower under the applicable law (the "Default Interest Rate"). Ex. B at § E.

39. Under the Note, if a payment is ten (10) days or more late, Borrowers will be charged five percent (5.000 %) of the unpaid portion of the regularly scheduled payment. Ex. B at § G.

    **C.**    **Fees and Costs**

40. Under the Loan Documents, Borrowers agreed to pay all of Lender's costs and expenses, including without limitation, reasonable attorneys' fees and costs, in connection with Lender's enforcement of its rights under the Loan Documents. *See*, *e.g.*, Ex. A at §§ 3, 9(c).

    **D.**    **The Defaults**

41. Borrowers and Guarantors are currently in default under the Loan Documents because: (a) Borrowers failed to pay the monthly installments due in connection with the Loan beginning with the installment on March 10, 2019; (b) Borrowers failed to pay each monthly

installment due thereafter; (c) Neither Borrowers nor Guarantors paid the balance due on the maturity date or thereafter upon receipt of notice and demand; (d) an Overadvance on the Loan occurred as reported on the February 28, 2019 Borrowing Base Certificate and has not been corrected; and (e) a material adverse change occurred in the business and prospects of Borrowers based on the provided financial statements as of January 31, 2019 (the "Defaults").[1]

42.     On April 17, 2019, Lender sent to Borrowers and Guarantors a Notice of Default and Reservation of Rights (the "Notice") stating that the parties defaulted under the terms of the Loan Documents after which neither Borrowers nor Guarantors resolved the defaults as set forth in the Notice. A true and correct copy of the Notice is attached hereto at "Exhibit N."

43.     Subsequently, on November 21, 2019, Lender sent to Borrowers and Guarantors a Demand for Payment (the "Demand") demanding Borrowers and Guarantors pay the balance due and owing on the Note as of November 21, 2019 in the amount of $6,865,082.99 plus daily accruing interest and attorneys' and consulting fees and costs. A true and correct copy of the Demand is attached hereto at "Exhibit O."

44.     Neither Borrowers nor Guarantors have paid the amount set forth in the Demand.

**E.     Amounts Due and Owing**

45.     Borrowers and Guarantors have failed to satisfy the obligations to Lender under the Loan Documents for outstanding amounts due and owing.

46.     As of December 16, 2019, the amounts due and owing under the Loan Documents are the following:

| | |
|---|---|
| Principal Balance | $ 6,496,000.00 |
| Interest | $ 392,518.55 |
| Late Charges | $ 5,886.99 |
| Subtotal | $ 6,894,405.21 |

---

[1] Additional defaults occurred or may occur and Lender reserves its right to amend its pleading to assert additional events of default.

>Plus interest accruing at in the amount of $1,172.89 per diem from December 16, 2019, together with all late charges, fees, attorneys' fees, expenses and costs that have accrued and that continue to accrue until all obligations due to Lender under the Loan Documents are paid in full, subject to changes in the applicable interest rates, if any, prior to such payment in full.

47. Lender has incurred attorneys' and consultants' fees at the time of the Demand in the approximate amount of $74,413.44 and $60,812.34 respectively.

48. Attorneys' fees have increased, and will continue to increase, as a result of Borrowers and Guarantors failure to pay the amount outstanding as set forth in the Demand and this Complaint.

## **COUNT I – BREACH OF PROMISSORY NOTE**

49. Lender adopts and re-alleges each and every allegation contained in Paragraphs 1 through 48 above as specifically set forth herein.

50. This is an action against Borrowers for breach of its obligations under the Note.

51. Borrowers executed the Note, as well as the Loan and Security Agreements effective May 2, 2018.

52. At all relevant times, Lender is the original obligee and payee on the face of the Note and has maintained possession of the original Note since originating the Loan.

53. Lender has fulfilled all of its obligations under the Note and all Loan Documents.

54. Pursuant to the terms of the Note, Borrowers agreed to pay Lender monthly payments of accrued interest until the Maturity Date of May 2, 2019 at which time the balance of the Loan would be due and payable.

55. Borrowers are in default under and in breach of the terms of Note and the Loan Documents for, among other things, failing to pay installments due under the Note and the Loan

Documents as of March 10, 2019, failing to pay the balance due as of the Maturity Date of May 2, 2019, and otherwise failing to perform the obligations under the Loan Documents.

56. Borrowers' ongoing breach of the Note and failure to pay pursuant to its terms has, and continues to, damage Lender in an amount no less than $6,894,405.21.

**WHEREFORE**, for the reasons set forth above, Lender demands judgment against Borrowers for damages resulting from Borrowers' breach of the Note and all related Loan Documents, including all amounts owed under the Loan Documents, plus prejudgment interest and post-judgment interest, plus reasonable attorneys' fees and costs incurred by Lender in connection with the Defaults, including, without limitation, the attorneys' fees and costs incurred in connection with the captioned matter and the enforcement of any judgment entered in connection with the captioned matter, and such other relief as the Court deems just and proper.

### COUNT II – BREACH OF COMMERCIAL GUARANTIES

57. Lender adopts and re-alleges each and every allegation contained in Paragraphs 1 through 48 above as specifically set forth herein.

58. This is an action against Guarantors for breach of the Guaranties.

59. Borrowers are in default under and in breach of the terms of Note and the Loan Documents for, among other things, failing to pay installments due under the Note and the Loan Documents as of March 10, 2019, failing to pay the balance due as of the Maturity Date of May 2, 2019, and otherwise failing to perform the obligations under the Loan Documents.

60. Pursuant to the Guaranties, Guarantors absolutely and unconditionally guaranteed the full and punctual payment and satisfaction of the Indebtedness (as defined in the Guaranties) of Borrowers to Lender and the performance of all of Borrowers' obligations to Lender under the Loan Documents.

61. Indebtedness, as defined under the Guaranties, includes all of the principal amount outstanding from time to time and at any one or more times, accrued unpaid interest thereon and all fees, late charges, costs and expenses related thereto permitted by law, reasonable attorneys' fees, arising from any and all debts, liabilities and obligations of every nature or form, now existing or thereafter arising or acquired, that Borrowers owe to Lender.

62. Guarantors are in default under and in breach of the terms of the Guaranties by, without limitation, failing to pay installments due under the Note and the Loan Documents on March 10, 2019 and all monthly payments due thereafter, failing to pay the balance due at the maturity date, and otherwise failing to perform the obligations under the Loan Documents.

63. Guarantors' ongoing breach of the Guaranties and failure to pay pursuant to its terms has, and continues to, damage Lender in an amount no less than $6,894,405.21.

**WHEREFORE**, for the reasons set forth above, Lender demands judgment against Guarantors, jointly and severally with Borrowers, for all amounts owed under the Loan Documents, plus prejudgment interest and post-judgment interest, plus reasonable attorneys' fees and costs incurred by Lender in connection with the Defaults, including, without limitation, the attorneys' fees and costs incurred in connection with the captioned matter and the enforcement of any judgment entered in connection with the captioned matter, and such other relief as the Court deems just and proper.

### COUNT III – FORECLOSURE OF SECURITY INTEREST

64. Lender adopts and re-alleges each and every allegation contained in Paragraphs 1 through 48 above as specifically set forth herein.

65. This is an action to foreclose Lender's security interest in the Collateral.

66. Pursuant to the terms of the Security Agreement and the Loan Documents, Borrowers granted Lender security interest in the Collateral to secure the indebtedness due under the Loan Documents.

67. Lender filed the Gobig.ly, Freeman, and Insterstellar UCC-1's perfecting its security interest in the Collateral.

68. Borrowers are in default under and in breach of the terms of the Loan Documents by, without limitation, failing to make payments due under the Note and the Loan Documents on March 10, 2019, and all monthly payments due thereafter, failing to pay the balance due at the maturity date, and otherwise failing to perform the obligations under the Loan Documents.

**WHEREFORE**, for the reasons set forth above, Lender demands judgment of foreclosure against Borrowers to sell the Collateral in satisfaction of amounts due under the Loan Agreement and in accordance with the Loan Documents, attorneys' fees and costs, and such other relief as the Court deems just and proper.

Respectfully submitted,

**McGLINCHEY STAFFORD, PLLC**

/s/Manuel Farach
Manuel Farach, Esq. (Bar No. 612138)
Florida Bar No. 612138
Daniel Halperin, Esq. (Bar No. 1010092)
Florida Bar No. 1010092
1 East Broward Boulevard, Suite 1400
Fort Lauderdale, FL 33301
Tele:(954) 356-2528
Fax:(954) 756-8064
mfarach@mcglinchey.com
dhalperin@mcglinchey.com
**Attorneys for Plaintiff Woodforest National Bank**